AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the use of
*(Briefly describe the property to be searched or identify the person by name and address)*
a Cell-Site Simulator to Identify the Cellular Device used by Luis GONZALAZ

) ) ) ) ) )

Case No. 2:20mj.622-EPD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C 843 (b) | Use of Telephone facility to facilitate the commission of a felony |
| 21 U.S.C 841 | Distribution of Narcotics |

The application is based on these facts: See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statue, 18 U.S.C 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that information likely to be obtained is relevant to an ongoing criminal investigation being conducted by DEA, HSI, or FBI. See 18 U.S.C 3122(b), 3123 (b).

☒ Continued on the attached sheet.

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Noah Bookman*
Applicant's signature

Noah Bookman, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: September 10, 2020

City and state: Columbus, Ohio

*Elizabeth Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTITY THE CELLULAR DEVICE CARRIED BY FNU LNU aka "Luis GONZALAZ" | Case No. 2:20 mj-622-EPD<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **Noah Bookman** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by **FNU LNU aka "Luis GONZALAZ** (the "**GONZALAZ**"), described in Attachment A.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 United States Code, Section 2516(1). During this time, your affiant has accumulated the following training and experience:

3. I graduated from the DEA Academy located in Quantico, Virginia in 2015. I received approximately 22 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and

interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, and money laundering investigations.

4. As a DEA agent, I have participated in the execution of numerous search warrants at residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous search warrants and investigations for drug related offenses.

5. As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, fentanyl, and its analogues, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801. I know that these are controlled substances under 21 U.S.C. § 801.

6. During the course of my law enforcement career, I have had experience in debriefing defendants, interviewing participating witnesses, cooperating individuals, and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution and concealment of records and proceeds of trafficking in controlled substances.

7. Before joining DEA, I was a police officer for approximately eight years, two of which as a narcotics officer primarily working narcotic cases. I have participated in numerous investigations involving narcotics trafficking.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district because **an alternate cellular device currently associated with this suspect has a telephone number area code corresponding in this district and according to precision location data for the alternate cellular device, obtained pursuant to a federal search warrant in the Southern District of Ohio, the alternate cellular device is currently located in the central Ohio area. The Target Cellular Device's owner is known to spend time in this district.** Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of **Title 21 U.S.C. § 846, conspiracy to possess with intent to distribute a controlled substance,** have been committed, are being committed, and will be committed by an **unknown person (aka "Luis GONZALAZ') who is a member of a drug trafficking organization (DTO).** There is also probable cause to believe that the identity of the Target Cellular Device will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Device, its user, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Device. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

11. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) &

3

(4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

12. In September of 2019, investigators initiated an investigation into the MIRA DTO. Investigators were able to purchase approximately two ounces of heroin from MIRA, aka "JUAN", by utilizing a confidential source, (hereinafter referred to as CS). Before and after the purchase, JUAN conducted multiple counter surveillance tactics to detect any law enforcement presence in the area. For example; before the meet with the CS, JUAN was observed driving through the adjacent apartment complex and appeared to be conducting surveillance for law enforcement. After the meet with JUAN, he was observed driving at a high rate of speed and making U-turns in the roadway. Investigators terminated the operation after the purchase due to the consistent counter surveillance on law enforcement and potentially being compromised.

13. In months after those events, investigators tried various law enforcement techniques trying to locate JUAN. JUAN contacted the CS several times informing him/her that law enforcement be been following him or were in the area. JUAN changed his telephone number, vehicle, and apartment numerous times to evade investigators.

14. In December 2019, investigators changed tactics while investigating JUAN. Investigators identified Crystal THOMAS as a member of the DTO and focused their

4

efforts on THOMAS. Investigators identified THOMAS' telephone number as (614) 397-5857. Investigators noticed JUAN had been in frequent contact with THOMAS. Investigators also learned that JUAN had been arrested by the Columbus Police Department for OVI.

15. In February 2020, investigators gathered information that JUAN had been recently arrest and his twin brother "MARIO" had taken control of the operation. Investigators learned that MARIO did not speak very good English and used a female to translate the conversation when there was a language barrier. Investigators observed MARIO and the female arriving at THOMAS' residence on multiple occasions.

16. Investigators also identified Scott MILLER of Athens, Ohio as a customer of THOMAS'. Investigators observed MILLER traveling almost daily to THOMAS' residence and stay for a short period of time. In April 2020, after MILLER departed from THOMAS' residence in Columbus, Ohio, an Athens County Sheriff's Office Deputy conducted a traffic stop on MILLER in Athens, Ohio. During the traffic stop, deputies located and seized approximately 5 grams of heroin. MILLER told the deputies that he purchased the heroin in Columbus, Ohio. MILLER was released from the traffic stop. In future days and months, MILLER continued to be in frequent contact with THOMAS and to go to her residence for short periods of time.

17. In mid-April 2020, investigators noticed MARIO's presence at THOMAS' residence had drastically decreased. While analyzing THOMAS' telephone records, investigators were unable to determine MARIO's new telephone number. Investigators observed a new telephone number, (614) 377-5381, having frequent contact with THOMAS. Investigators noticed THOMAS would contact (614) 377-5381 before MILLER

5

would arrive at her residence. A short time after THOMAS contacted the (614) 377-5381, investigators would observe a male Hispanic (later identified as Victor LOPEZ) arrive at the residence who would only stay for a short period of time. Based on my training, experience, and knowledge of this activity, the manner in which these meets were conducted and the short duration are indicative of drug trafficking.

18. From April to June 2020, investigators observed LOPEZ arrive at THOMAS' residence nearly daily, if not multiple times a day. Investigators observed the (614) 377-5381 in contact with THOMAS before LOPEZ would arrive at the residence. Through an electronic surveillance platform, investigators observed LOPEZ exiting the rear door of THOMAS' residence and appeared to be placing currency into his pocket. Investigators applied for and were granted a precision location data federal search warrant for telephone (614) 377-5381. When investigators received the data from the telephone company there was no GPS included. Investigators contacted the telephone company due to the lack of data. The telephone company advised that telephone number (614) 377-5381 was not connecting to their towers. This usually means the telephone number is outside of the United States. While analyzing the number (614) 377-5381 between March and July of 2020, investigators noticed (614) 377-5381 had been in contact with THOMAS' device 499 times.

19. In July of 2020, investigators applied for and were granted a Federal Warrant for a Title III on THOMAS' telephone number. Through the investigation it was determined THOMAS' role in the DTO is a "middle person". THOMAS only contacts, GONZALAZ when a user is ready to purchase the heroin. Investigators determined

6

LOPEZ' role in the DTO is a "runner" for GONZALAZ. LOPEZ would transport the heroin to the customer on behalf of GONZALAZ. Investigators determined GONZALAZ role is a "dispatcher". GONZALAZ would receive calls from customers, the customer would place the narcotic order, and then GONZALAZ would contact the "runner' to complete the narcotic order/transaction. Investigators intercepted multiple telephone conversation between THOMAS and GONZALAZ utilizing (614) 377-5381. For example, on July 10, 2020, THOMAS contacted the GONZALAZ, utilizing (614) 377-5381 and below is the conversation:

| | |
|---|---|
| GONZALAZ: | Hey |
| THOMAS: | Let me get two ounces. |
| GONZALAZ: | Ounces? |
| THOMAS: | Two ounces, two ounces |
| GONZALAZ: | Two ounces? |
| THOMAS: | Yes |
| GONZALAZ: | Hi Victor. Two ounces? |
| THOMAS: | Two ounces and five grams |
| GONZALAZ: | Okay. On my way. |
| THOMAS: | Okay, thank you |
| GONZALAZ: | Thank you |
| THOMAS: | You're welcome baby |
| | The call was disconnected |

20. The same day, investigators observed LOPEZ arrive at THOMAS' residence and stay for a short period of time. Based on my training, experience, and knowledge of

7

this activity, the manner in which these meets were conducted and the short duration are indicative of drug trafficking. An Ohio State Highway Patrol Trooper conducted a traffic stop on the individual(s) who purchased the two ounces from THOMAS on that day. During the traffic stop, troopers located and seized approximately two ounces of heroin.

21. On July 14, 2020, THOMAS was no longer contacting GONZALAZ using (614) 377-5381, however, THOMAS was contacting GONZALAZ using (614) 822-7973 to place the heroin order. For example; On August 4, 2020, THOMAS contacted GONZALAZ, utilizing telephone number (614) 822-7973, and what follows is a transcription of a portion of the wire communication:

| | |
|---|---|
| GONZALAZ: | Hey |
| THOMAS: | Hey, baby. Uh… [U/I] last night, but listen, you said you had China? |
| GONZALAZ: | Yeah. |
| THOMAS: | Okay, how much is it cost? |
| GONZALAZ: | I don't know how much is it cost, bay. I [STAMMERS] call my boss, I don't know |
| THOMAS: | Okay, well I need you to call you boss, find out how much it is, if I can get it by how much it is per gram, per half ounce and how much is it an ounce. |
| GONZALAZ: | How [STAMMERS] sell it only for ounce. |
| THOMAS: | Okay, I need to know how much it is then, for an ounce. |
| GONZALAZ: | How [STAMMERS] much is the price, you know? |

8

    THOMAS:    I don't know. I haven't seen – I haven't been able to buy any real China, true China.

22. While analyzing telephone number (614) 822-7973 between July to August of 2020, investigators noticed telephone number (614) 822-7973 had been in contact with THOMAS' device 227 times. Investigators believe GONZALAZ is currently supplying heroin to THOMAS.

23. Investigators served an administrative subpoena to Sprint in reference to telephone number (614) 822-7973. The data returned to investigators from Sprint stated the telephone was being billed to Luis GONZALAZ. GONZALAZ' billing address was 1400 Harrisburg Pike in Columbus, Ohio. Investigators believe the billing address is a fraudulent address.

24. As stated above in the affidavit, investigators determined LOPEZ is being dispatched by GONZALAZ. GONZALAZ is believed to be using an alternate cellular device to contact LOPEZ. While analyzing GONZALAZ' tolls, investigators did not detect GONZALAZ making any immediate outgoing calls on telephone number (614) 822-7973 to dispatch LOPEZ to complete the narcotic transaction. Investigators have been unable to determine GONZALAZ' alternate cellular device. Investigator believe GONZALAZ has an alternate cellular device to assist in furthering the DTO's illegal narcotic activity.

## MANNER OF EXECUTION

25. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including

9

towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

26. To facilitate execution of this warrant, investigators may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Investigators will use this investigative device when they have reason to believe that **Luis GONZALAZ** is present. Investigators will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique. Because there is probable cause to determine the identity of the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

27. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices. Once law enforcement has identified the Target Cellular Device, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, investigators will make no investigative use of information

10

concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

## AUTHORIZATION REQUEST

28. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

29. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

30. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

11

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

32. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*Noah Bookman*

**Noah Bookman**
Special Agent
**Drug Enforcement Administration**

Subscribed and sworn to before me
on ___September 10, 2020___:

Elizabeth A. Preston Deavers
United States Magistrate Judge

12

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that **Luis GONZALAZ** is present in the central Ohio area, based on a federal search warrant for **precision location data.**

## ATTACHMENT B

The "Target Cellular Device" is the cellular device or devices carried by **Luis GONZALAZ**. Pursuant to an investigation of **Luis GONZALAZ**, for a violation of **conspiracy to possess with intent to distribute a controlled substance**, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).